NF

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | JUDGE GOTTSCHALL |
| | ) | |
| v. | ) | Case No. 09 CR 332 |
| | ) | |
| SAUL RODRIGUEZ, | ) | Violations:  Title 18, United States Code, |
| GLENN LEWELLEN, | ) | Sections 2, 924(c), 1957, 1959, 1962(d); Title |
| HECTOR URIARTE, | ) | 21, United States Code, Sections 841(a)(1) |
| also known as "Gordo" and "G," | ) | and 846 |
| JORGE URIARTE, | ) | MAGISTRATE JUDGE COX |
| also known as "Lefty," | ) | Judge Joan B. Gottschall |
| MANUEL URIARTE, | ) | |
| also known as "Manny," | ) | **THIRD SUPERSEDING INDICTMENT** |
| ANDRES FLORES, | ) | |
| also known as "Turtle," | ) | |
| TONY SPARKMAN, | ) | |
| also known as "Black" and | ) | |
| "Big Black," | ) | |
| FARES UMAR, | ) | |
| also known as "Sumo," | ) | |
| WALTER JOHNSON, | ) | |
| also known as "Wheels," | ) | |
| JORGE LOPEZ, | ) | |
| also known as "Oso" and "O," and | ) | |
| ROBERT CARDENA | ) | |

FILED

JAN 1 3 2011  NF

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COUNT ONE

The SPECIAL JANUARY 2009 GRAND JURY charges:

## RACKETEERING ENTERPRISE

At times material to this indictment:

1.     There existed a criminal organization, that is, a group of individuals consisting of defendants SAUL RODRIGUEZ, GLENN LEWELLEN, HECTOR URIARTE, JORGE URIARTE, MANUEL URIARTE, ANDRES FLORES, TONY SPARKMAN, FARES UMAR, as well as Andres Torres, Pedro Victoria, and others known and unknown to the Grand Jury;

2.     This criminal organization, including its leadership, membership and associates, constituted an "enterprise" as that term is used in Title 18, United States Code, Section 1961(4) (hereinafter, the "Rodriguez Enterprise"), that is, a group of individuals associated in fact, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce; and

3.     The Rodriguez Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise.

2

## **PURPOSES OF THE ENTERPRISE**

4.     The purposes of enterprise included, but were not limited to, the following:

a.     Enriching the leaders, members, and associates of the enterprise through the use of threats, intimidation, and violence including, but not limited to, acts of murder, kidnapping, robbery, and the illegal trafficking of controlled substances.

b.     Promoting and enhancing the enterprise and its members' and associates' activities.

c.     Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence. The leaders, members, and associates of the enterprise undertook steps necessary to prevent the detection of their criminal activities, and sought to prevent and resolve the imposition of any criminal liabilities upon their leaders, members, and associates, by the use of violence and intimidation directed against victims, witnesses, and others.

d.     Obstructing justice and criminal investigations by gathering information concerning the fact of, and extent of, ongoing federal criminal investigations from, among other sources, former and current local law enforcement officers.

3

## ROLES IN THE ENTERPRISE

5.    At times material to this indictment, the defendants performed multiple roles within the enterprise that included, but were not limited to, the following:

a.    SAUL RODRIGUEZ was a leader of the enterprise. In that role, RODRIGUEZ oversaw, directed, guided, and participated in the illegal activities of the enterprise, including, but not limited to, murder, kidnapping, robbery, and the illegal trafficking of controlled substances. RODRIGUEZ oversaw how the proceeds of the enterprise's illegal activities were divided among the enterprise's members and associates.

b.    GLENN LEWELLEN served the enterprise by, among other things, directing and participating in the illegal activities of the enterprise, including, but not limited to, obstruction of justice, kidnapping, robbery, and the illegal trafficking of controlled substances. Between December 1986 and 2002, LEWELLEN was employed as a police officer by the Chicago Police Department. LEWELLEN provided certain members and associates of the enterprise with information concerning the fact of, and extent of, ongoing federal criminal investigations into the enterprise's illegal activities.

c.    HECTOR URIARTE served the enterprise by, among other things, directing and participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances.

d.    JORGE URIARTE served the enterprise by, among other things, directing and participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances.

4

e.    MANUEL URIARTE served the enterprise by, among other things, participating in the illegal activities of the enterprise, including, but not limited to, murder and kidnapping.

f.    ANDRES FLORES served the enterprise by, among other things, participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances.

g.    TONY SPARKMAN served the enterprise by, among other things, participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances.

h.    FARES UMAR served the enterprise by, among other things, participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances.

i.    Andres Torres served the enterprise by, among other things, participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances.

j.    Pedro Victoria served the enterprise by, among other things, participating in the illegal activities of the enterprise, including, but not limited to, kidnapping, robbery, and the illegal trafficking of controlled substances.

## **RACKETEERING CONSPIRACY**

6.      Beginning no later than in or about 1996, and continuing until at least on or about

April 9, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ,
GLENN LEWELLEN,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty,"
MANUEL URIARTE,
also known as "Manny,"
ANDRES FLORES,
also known as "Turtle,"
TONY SPARKMAN,
also known as "Black" and "Big Black," and
FARES UMAR,
also known as "Sumo,"

defendants herein, and Andres Torres and Pedro Victoria, together with others known and

unknown to the Grand Jury, being persons employed by and associated with the enterprise, which

engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, and

intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to

conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise

through a pattern of racketeering activity consisting of multiple acts indictable under the

following provisions of federal law:

Title 21, United States Code, Sections 841 and 846 (drug trafficking);

Title 18, United States Code, Section 1951 (robbery); and

Title 18, United States Code, Section 1503 (obstructing the due administration of

justice);

and multiple acts involving state offenses chargeable under the following provisions of state law:

Murder in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1.1, 5/8-2, 5/8-4, and 5/9-1;

Kidnapping in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2; and

Robbery in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-4, 5/18-1, and 5/18-2.

7.      It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## MEANS AND METHODS OF THE CONSPIRACY

8.      It was further part of the conspiracy that the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise included the following:

a.      Members of the enterprise and their associates murdered individuals in exchange for money or access to wholesale quantities of controlled substances.

b.      Members of the enterprise and their associates identified victims from whom they could obtain wholesale quantities of controlled substances or large sums of money by kidnapping those individuals and holding them for ransom or robbing them.

c.      Members of the enterprise and their associates conducted surveillance of the enterprise's intended murder, kidnapping, and robbery victims.

7

d.  Members of the enterprise and their associates obtained, used, carried, possessed, brandished, and discharged firearms in connection with the enterprise's illegal activities, including, but not limited to, murder, kidnapping, robbery, and illegal trafficking of controlled substances.

e.  Members of the enterprise and their associates used a vehicle made to appear as if it was an unmarked police vehicle to facilitate the kidnapping and robbery of the enterprise's victims.

f.  Members of the enterprise and their associates held themselves out as police officers when kidnapping and robbing victims.

g.  Members of the enterprise and their associates transported kidnapping and robbery victims in vehicles to homes and garages under the enterprise's control.

h.  Members of the enterprise and their associates restrained kidnapping and robbery victims to prevent their escape and identification of the members of the enterprise and their associates.

i.  Members of the enterprise and their associates used threats of violence, violence, and intimidation to cause kidnapping and robbery victims to provide wholesale quantities of controlled substances and/or large sums of money to secure their release.

j.  Members of the enterprise and their associates used threats of violence, violence, and intimidation to cause kidnapping and robbery victims and witnesses to those crimes not to report the kidnapping and robberies to law enforcement.

k.  At least one of the members of the enterprise and their associates obstructed justice to protect and conceal the enterprises's illegal activities, including but not

8

limited to, the December 21, 1999 false testimony of GLENN LEWELLEN in *United States v. Refugio Ruiz-Cortez*, 99 CR 493 (N.D. IL.).

        l.      The murders committed by members and associates of the enterprise in the conduct of the affairs of the enterprise included, but are not limited to, the following:

        (1)      The June 3, 2000 murder of Juan Luevano by SAUL RODRIGUEZ, MANUEL URIARTE, and others known and unknown; and

        (2)      The May 31, 2001 murder of Michael Garcia by SAUL RODRIGUEZ, MANUEL URIARTE, and others known and unknown.

        m.      The robberies and kidnappings committed by members and associates of the enterprise in the conduct of the affairs of the enterprise included, but are not limited to, the following:

        (1)      The 2002 kidnapping of Victim D by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, FARES UMAR, and others known and unknown, resulting in the possession of approximately $110,000 by members of the enterprise;

        (2)      The Summer 2003 kidnapping of Victim G by SAUL RODRIGUEZ, GLENN LEWELLEN, HECTOR URIARTE, JORGE URIARTE, FARES UMAR, and others known and unknown, resulting in the possession of approximately 100 kilograms of cocaine and cocaine proceeds by members of the enterprise;

        (3)      The November 18, 2003 kidnapping of Victim H by SAUL RODRIGUEZ, FARES UMAR, and others known and unknown;

        (4)      The 2004 kidnapping of Victim I by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, and others known and unknown;

(5)     The Summer 2006 kidnapping of Victim M and Victim N by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, and others known and unknown; and

(6)     The October 2007 kidnapping and robbery of Victim O, Victim P, Victim Q, Victim R, Victim S, Victim T, and Victim U by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others known and unknown, resulting in the possession of approximately $2,000 by members of the enterprise.

(7)     The 2008 kidnapping and robbery of Victim V and Victim W by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, TONY SPARKMAN, and others known and unknown, resulting the possession of approximately $1,500 by members of the enterprise.

n.     The instances of possession and attempted possession of narcotics committed by members and associates of the enterprise in the conduct of the affairs of the enterprise included, but are not limited to, the following:

(1)     The 2004 possession with intent to distribute 5 kilograms or more of mixtures and substances containing cocaine by SAUL RODRIGUEZ, GLENN LEWELLEN, and others known and unknown.

(2)     The Summer 2006 possession with intent to distribute 5 kilograms or more of mixtures and substances containing cocaine by SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others known and unknown.

(3)     The April 9, 2009 attempted possession with intent to distribute 5 kilograms or more of mixtures and substances containing cocaine SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others known and unknown.

o.     Members of the enterprise and their associates purchased wholesale quantities of controlled substances that they then distributed and caused to be distributed to wholesale customers in the Chicago area and elsewhere.

p.     Members of the enterprise and their associates obtained wholesale quantities of controlled substances from locations in the Chicago area through robberies and kidnappings, threats of violence, violence, and intimidation. Members of the enterprise and their associates then distributed and caused the wholesale quantities of controlled substances to be distributed to wholesale customers in the Chicago area and elsewhere.

q.     Members of the enterprise and their associates used warehouses in the Chicago area to store controlled substances and United States Currency derived from their sale of controlled substances.

r.     Members of the enterprise and their associates obtained and used trap compartments in homes and vehicles to conceal and store controlled substances, money, and firearms.

s.     Members of the enterprise and their associates shared in the proceeds of the enterprise's illegal activities, including, but not limited to: murder, kidnappings, robberies, and trafficking of controlled substances.

t.     Members of the enterprise and their associates invested proceeds from their participation in the enterprise's illegal activities in real estate and businesses to conceal their involvement in and proceeds from the enterprise's illegal activities.

u.     Members of the enterprise and their associates obtained information about the fact of, and the extent of, federal investigations into the enterprise's illegal activities.

Members of the enterprise and their associates used that information to evade detection by law enforcement.

      v.    Members of the enterprise and their associates used multiple cellular telephones and pagers to communicate with one another concerning and during the commission of the enterprise's illegal activities.

      w.    Members of the enterprise and their associates concealed and hid, and cause to be concealed and hidden, the purposes of the acts done in furtherance of the enterprise, and would and did use coded language, surveillance and counter-surveillance techniques, and other means to avoid detection and apprehension by law enforcement authorities and otherwise to provide security to members of the enterprise.

## NOTICE OF SPECIAL FINDINGS & ENHANCED SENTENCING
## AS TO THE RACKETEERING CONSPIRACY

    9.    On or about June 3, 2000, at Cicero, in the Northern District of Illinois, Eastern Division, defendants SAUL RODRIGUEZ and MANUEL URIARTE, and others, known and unknown to the Grand Jury, committed and caused to be committed, the murder of Juan Luevano. By the conduct described in this paragraph, the defendants committed an act and threat involving murder, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/9-1, 5/9-1(b)(5), 5/9-1(b)(9), and 5/9-1(b)(11), Title 730, Illinois Compiled Statutes, Sections 5/5-8-1(a)(1)(b), 5/5-8-1(a)(1)(c)(ii), and 5/5-8-1(a)(1)(d)(iii), in that they killed an individual, that is, Juan Luevano, without lawful justification and, in performing the acts which caused the death, they: (i) intended to kill that individual and/or another; (ii) intended to do great bodily harm to that individual and/or another; (iii) knew such acts would cause the death of that

individual and/or another; and (iv) knew such acts created a strong probability of death and great bodily harm to that individual and/or another; and

    (A)    at the time of the commission of the offense, they had attained the age of 18 or more, and: (i) they committed the murder pursuant to a contract, agreement or understanding by which they were to receive money and anything of value in return for committing the murder and procured another to commit the murder for money and anything of value; and (ii) they committed the murder in a cold, calculated, and premeditated manner pursuant to a preconceived plan, scheme, or design to take a human life by unlawful means, and the conduct of the defendants created a reasonable expectation that the death of a human being would result therefrom; and

    (B)    irrespective of the defendants' age at the time of the commission of the offense, they are found guilty of murdering more than one victim; and

    (C)    during the commission of the offense, MANUEL URIARTE personally discharged a firearm that proximately caused: (i) great bodily harm to another person; (ii) permanent disability to another person; (iii) permanent disfigurement to another person; and (iv) death to another person.

    10.    On or about May 31, 2001, at Chicago, in the Northern District of Illinois, Eastern Division, defendants SAUL RODRIGUEZ and MANUEL URIARTE, and others, known and

unknown to the Grand Jury, committed and caused to be committed, the murder of Michael Garcia. By the conduct described in this paragraph, the defendants committed an act and threat involving murder, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/9-1, 5/9-1(b)(5), 5/9-1(b)(9), and 5/9-1(b)(11), and Title 730, Illinois Compiled Statutes, Sections 5/5-8-1(a)(1)(b), 5/5-8-1(a)(1)(c)(ii), and 5/5-8-1(a)(1)(d)(iii), in that they killed an individual, that is, Michael Garcia, without lawful justification and, in performing the acts which caused the death, they: (i) intended to kill that individual and/or another; (ii) intended to do great bodily harm to that individual and/or another; (iii) knew such acts would cause the death of that individual and/or another; and (iv) knew such acts created a strong probability of death and great bodily harm to that individual and/or another; and

> (A)     at the time of the commission of the offense, they had attained the age of 18 or more, and: (i) they committed the murder pursuant to a contract, agreement or understanding by which they were to receive money and anything of value in return for committing the murder and procured another to commit the murder for money and anything of value; and (ii) they committed the murder in a cold, calculated, and premeditated manner pursuant to a preconceived plan, scheme, or design to take a human life by unlawful means, and the conduct of the defendants created a reasonable expectation that the death of a human being would result therefrom; and

14

    (B)     irrespective of the defendants' age at the time of the commission of the offense, they are found guilty of murdering more than one victim.

11.    In or around 2002, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, MANUEL URIARTE, and FARES UMAR, and others, known and unknown to the Grand Jury, committed and caused to be committed, the kidnapping of Victim D. By the conduct described in this paragraph, the defendants committed an act involving kidnapping, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2, in that they kidnapped an individual, that is, Victim D, that is they: (1) secretly confined the individual against her will; and (2) by force and threat of imminent force carried the individual from one place to another with intent secretly to confine her against her will; and

    (A)     kidnapped the individual for the purpose of obtaining ransom from the individual or from any other person;

    (B)     inflicted great bodily harm, other than by the discharge of a firearm, and committed another felony upon the individual;

    (C)     wore a hood, robe, and mask and concealed their identity;

    (D)     committed the offense while armed with a dangerous weapon, other than a firearm, as defined in Section 33A-1 of the Criminal Code of 1961; and

    (E)     committed the offense while armed with a firearm.

12.    In or around the Summer of 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, GLENN LEWELLEN,

HECTOR URIARTE, JORGE URIARTE, FARES UMAR, and others, known and unknown to the Grand Jury, committed and caused to be committed, the kidnapping of Victim G. By the conduct described in this paragraph, the defendants committed an act involving kidnapping, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2, in that they kidnapped an individual, that is, Victim G, that is they: (1) secretly confined the individual against his will; (2) by force and threat of imminent force carried the individual from one place to another with intent secretly to confine him against his will; and (3) by deceit and enticement induced the individual to go from one place to another with intent to secretly confine him against his will; and

    (A)    kidnapped the individual for the purpose of obtaining ransom from the individual or from any other person;

    (B)    inflicted great bodily harm, other than by the discharge of a firearm, and committed another felony upon the individual;

    (C)    wore a hood, robe, and mask and concealed their identity; and

    (D)    committed the offense while armed with a firearm.

13.    On or about November 18, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, FARES UMAR, and others, known and unknown to the Grand Jury, committed and caused to be committed, the kidnapping of Victim H. By the conduct described in this paragraph, the defendants committed an act involving kidnapping, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2, in that they kidnapped an individual, that is, Victim H, that is they: (1) secretly confined the individual against his will; (2) by force and threat of imminent force carried the

individual from one place to another with intent secretly to confine him against his will; and (3) by deceit and enticement induced the individual to go from one place to another with intent secretly to confine him against his will; and

    (A)    kidnaped the individual for the purpose of obtaining ransom from the individual or from any other person;

    (B)    inflicted great bodily harm, other than by the discharge of a firearm, and committed another felony upon the individual;

    (C)    wore a hood, robe, and mask and concealed their identity; and

    (D)    committed the offense while armed with a firearm.

14.    In or around 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, and others, known and unknown to the Grand Jury, committed and caused to be committed, the kidnapping of Victim I.  By the conduct described in this paragraph, the defendants committed an act involving kidnapping, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2, in that they kidnapped an individual, that is, Victim I, that is they: (1) secretly confined the individual against his will; and (2) by force and threat of imminent force carried the individual from one place to another with intent secretly to confine him against his will; and

    (A)    kidnapped the individual for the purpose of obtaining ransom from the individual or from any other person;

    (B)    inflicted great bodily harm, other than by the discharge of a firearm, and committed another felony upon the individual;

    (C)    wore a hood, robe, and mask and concealed their identity; and

    (D)    committed the offense while armed with a firearm.

15.    In or around Summer 2006, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, and others, known and unknown to the Grand Jury, committed and caused to be committed, the kidnapping of Victim M and Victim N. By the conduct described in this paragraph, the defendants committed an act involving kidnapping, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2, in that they kidnapped individuals, that is, Victim M and Victim N, that is they: (1) secretly confined the individuals against their will; and (2) by force and threat of imminent force carried the individuals from one place to another with intent secretly to confine them against their will; and

    (A)    kidnapped the individuals for the purpose of obtaining ransom from those individuals or from any other person;

    (B)    inflicted great bodily harm, other than by the discharge of a firearm, and committed another felony upon the individuals;

    (C)    wore a hood, robe, and mask and concealed their identity; and

    (D)    committed the offense while armed with a firearm.

16.    On or about October 20, 2007, at Summit, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others, known and unknown to the Grand Jury, committed and caused to be committed, the kidnapping of Victim O, Victim P, Victim Q, Victim R, Victim S, Victim T, and Victim U. By the conduct described in this

18

paragraph, the defendants committed an act involving kidnapping, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2, in that they kidnapped individuals, that is, Victim O, Victim P, Victim Q, Victim R, Victim S, Victim T, and Victim U, that is they: (1) secretly confined the individuals against their will; (2) by force and threat of imminent force carried the individuals from one place to another with intent secretly to confine them against their will; and (3) by deceit and enticement induced the individuals to go from one place to another with intent secretly to confine them against their will; and

      (A)    kidnapped the individuals for the purpose of obtaining ransom from the individuals or from any other person;

      (B)    inflicted great bodily harm, other than by the discharge of a firearm, and committed another felony upon the individuals;

      (C)    wore a hood, robe, and mask and concealed their identity; and

      (D)    committed the offense while armed with a firearm.

      17.    In or around 2008, at Lyons, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, TONY SPARKMAN, and others, known and unknown to the Grand Jury, committed and caused to be committed, the kidnapping of Victim V and Victim W. By the conduct described in this paragraph, the defendants committed an act involving kidnapping, in violation of Title 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/10-1, 5/10-2, in that they kidnapped individuals, that is, Victim V and Victim W, that is they: (1) secretly confined the individuals against their will; and (2) by force and threat of imminent force carried the individuals from one place to another with intent secretly to confine them against their will; and

(A)     kidnaped the individuals for the purpose of obtaining ransom from the individuals or from any other person;

(B)     inflicted great bodily harm, other than by the discharge of a firearm, and committed another felony upon the individuals; and

(C)     committed the offense while armed with a firearm.

18.     In or around 2004, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, GLENN LEWELLEN, and others, known and unknown to the Grand Jury, did knowingly and intentionally possess with intent to distribute controlled substances, namely, 5 kilograms or more of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

19.     In or around the Summer 2006, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others, known and unknown to the Grand Jury, did knowingly and intentionally possess with intent to distribute controlled substances, namely, 5 kilograms or more of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

20.     On or about April 9, 2009, at Channahon, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, and others, known and unknown to the Grand Jury, did attempt to knowingly and intentionally possess with intent to distribute controlled substances, namely, 5 kilograms or more of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and 846, and Title 18, United States Code, Section 2.

All of the above in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.     The Grand Jury realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 5 of Count One of the Third Superseding Indictment.

2.     At times relevant to this indictment, the Rodriguez Enterprise, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the Rodriguez Enterprise, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.     At times relevant to this indictment, the above-described enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving narcotics trafficking, in violation of Title 21, United States Code, Sections 841 and 846, and acts involving obstruction of justice, in violation of Title 18, United States Code, Section 1503.

22

4.     On or about June 3, 2000, at Cicero, in the Northern District of Illinois, Eastern

Division,

SAUL RODRIGUEZ, and
MANUEL URIARTE,
also known as "Manny,"

defendants herein, and others known and unknown to the Grand Jury, as consideration for the

receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value

from the Rodriguez Enterprise, and for the purpose of gaining entrance to, and for maintaining

and increasing position in the Rodriguez Enterprise, an enterprise engaged in racketeering

activity, did knowingly and intentionally commit murder of an individual, that is, Juan Luevano,

in violation of the laws of the State of Illinois (Title 720, Illinois Compiled Statutes, Sections

5/9-1, 5/5-1, and 5/5-2);

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

23

## COUNT THREE

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.     The Grand Jury realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 5 of Count One and paragraphs 2 and 3 of Count Two of the Third Superseding Indictment.

2.     On or about May 31, 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ, and
MANUEL URIARTE,
also known as "Manny,"

defendants herein, and others known and unknown to the Grand Jury, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Rodriguez Enterprise, and for the purpose of maintaining and increasing position in the Rodriguez Enterprise, an enterprise engaged in racketeering activity, did knowingly and intentionally commit murder of an individual, that is, Michael Garcia, in violation of the laws of the State of Illinois (720, Illinois Compiled Statutes, Sections 5/9-1, 5/5-1, and 5/5-2);

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT FOUR

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

In or around Summer 2006, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty,"
ANDRES FLORES,
also known as "Turtle,"
TONY SPARKMAN,
also known as "Black" and "Big Black," and
ROBERT CARDENA,

defendants herein, and others known and unknown to the Grand Jury, did knowingly and intentionally possess with intent to distribute controlled substances, namely, 5 kilograms or more of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT FIVE

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.    The Grand Jury realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 5 of Count One and paragraphs 2 and 3 of Count Two of the Third Superseding Indictment.

2.    In or around Summer 2006, at Joliet, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ,
HECTOR URIARTE,
also known as "Gordo" and "G," and
JORGE URIARTE,
also known as "Lefty,"

defendants herein, and others known and unknown to the Grand Jury, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Rodriguez Enterprise, and for the purpose of maintaining and increasing position in the Rodriguez Enterprise, an enterprise engaged in racketeering activity, did knowingly and intentionally kidnap individuals, that is, Victim M and Victim N, in violation of the laws of the State of Illinois (720, Illinois Compiled Statutes, Sections 5/10-1, 5/10-2);

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT SIX

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

On or about November 15, 2006, in the Northern District of Illinois, Eastern Division, and elsewhere,

WALTER JOHNSON,
also known as "Wheels,"

defendant herein, knowingly engaged and attempted to engage in a monetary transaction in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property was derived from a specified unlawful activity, namely conspiracy to distribute and possess with intent to distribute narcotics, in violation of Title 21, United States Code, Section 846, in that defendant transferred and caused to be transferred $31,000;

In violation of Title 18, United States Code, Section 1957.

27

## COUNT SEVEN

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.      The Grand Jury realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 5 of Count One and paragraphs 2 and 3 of Count Two of the Third Superseding Indictment.

2.      On or about October 20, 2007, at Summit, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty,"
ANDRES FLORES,
also known as "Turtle," and
TONY SPARKMAN,
also known as "Black" and "Big Black,"

defendants herein, and others known and unknown to the Grand Jury, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Rodriguez Enterprise, and for the purpose of maintaining and increasing position in the Rodriguez Enterprise, an enterprise engaged in racketeering activity, did knowingly and intentionally kidnap individuals, that is, Victim O, Victim P, Victim Q, Victim R, Victim S, Victim T, and Victim U, in violation of the laws of the State of Illinois (720, Illinois Compiled Statutes, Sections 5/10-1, 5/10-2);

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

28

## COUNT EIGHT

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

On or about October 20, 2007, at Summit, in the Northern District of Illinois, Eastern Division,

HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty," and
TONY SPARKMAN,
also known as "Black" and "Big Black,"

did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, kidnapping in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Seven of this Third Superseding Indictment;

All in violation of Title 18, United States Code, Sections 924(c) and 2.

## COUNT NINE

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

On or about October 23, 2007, at Aurora, in the Northern District of Illinois, Eastern Division, and elsewhere,

### SAUL RODRIGUEZ,

defendant herein, and others known and unknown to the Grand Jury, did knowingly and intentionally possess with intent to distribute controlled substances, namely, 5 kilograms or more of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT TEN

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.     The Grand Jury realleges and incorporates herein by reference the allegations contained in paragraphs 1 through 5 of Count One and paragraphs 2 and 3 of Count Two of the Third Superseding Indictment.

2.     In or around 2008, at Lyons, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty," and
TONY SPARKMAN,
also known as "Black" and "Big Black,"

defendants herein, and others known and unknown to the Grand Jury, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Rodriguez Enterprise, and for the purpose of maintaining and increasing position in the Rodriguez Enterprise, an enterprise engaged in racketeering activity, did knowingly and intentionally kidnap individuals, that is, Victim V and Victim W, in violation of the laws of the State of Illinois (720, Illinois Compiled Statutes, Sections 5/10-1, 5/10-2);

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

31

## COUNT ELEVEN

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

In or around 2008, at Lyons, in the Northern District of Illinois, Eastern Division,

HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty," and
TONY SPARKMAN,
also known as "Black" and "Big Black,"

did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, kidnapping in aid of racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), as charged in Count Ten of this Third Superseding Indictment;

All in violation of Title 18, United States Code, Sections 924(c) and 2.

## COUNT TWELVE

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

On or about April 9, 2009, at Channahon, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty,"
ANDRES FLORES,
also known as "Turtle," and
TONY SPARKMAN,
also known as "Black" and "Big Black," and
JORGE LOPEZ,
also known as "Oso" and "O,"

defendants herein, did attempt to knowingly and intentionally possess with intent to distribute controlled substances, namely, 5 kilograms or more of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## COUNT THIRTEEN

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.      Beginning no later than 1996, and continuing until at least on or about April 9,

2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAUL RODRIGUEZ,
GLENN LEWELLEN,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty,"
ANDRES FLORES,
also known as "Turtle,"
TONY SPARKMAN,
also known as "Black" and "Big Black,"
FARES UMAR,
also known as "Sumo,"
WALTER JOHNSON,
also known as "Wheels,"
JORGE LOPEZ,
also known as "Oso" and "O," and
ROBERT CARDENA,

defendants herein, did conspire with each other, with Andres Torres, Pedro Victoria, Ruben

Villarreal, and others known and unknown to the Grand Jury, to knowingly and intentionally

possess with intent to distribute and to distribute controlled substances, namely, 5 kilograms or

more of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled

Substance, and 1 kilogram or more of mixtures and substances containing heroin, a Schedule I

Narcotic Drug Controlled Substance,   in violation of Title 21, United States Code, Section

841(a)(1).

34

2.     It was part of the conspiracy that defendant SAUL RODRIGUEZ led a drug trafficking organization (hereinafter, "the Rodriguez DTO") that obtained wholesale quantities of cocaine and heroin in the Chicago area for resale in the Chicago area and elsewhere.

3.     It was further part of the conspiracy that defendant SAUL RODRIGUEZ, on behalf of the Rodriguez DTO, arranged for the purchase of wholesale amounts of cocaine and heroin from various suppliers, including Pedro Victoria.  The cocaine and heroin was commonly "fronted" to the Rodriguez DTO, meaning the cocaine and heroin was provided to the Rodriguez DTO with the understanding that the Rodriguez DTO would make a complete payment for the cocaine or heroin later after the cocaine or heroin was resold.

4.     It was further part of the conspiracy that defendant SAUL RODRIGUEZ, on behalf of the Rodriguez DTO, arranged to obtain wholesale quantities of cocaine from various cocaine suppliers and their workers  in the Chicago area through robberies and kidnappings and through threats of violence, violence, and intimidation.

5.     It was further part of the conspiracy that defendants SAUL RODRIGUEZ, GLENN LEWELLEN, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, TONY SPARKMAN, FARES UMAR, JORGE LOPEZ, ROBERT CARDENA, and Andres Torres, obtained wholesale quantities of cocaine in the Chicago area through threats of violence, violence, and intimidation.

6.     It was further part of the conspiracy that defendant GLENN LEWELLEN held himself out as a police officer when obtaining wholesale quantities of cocaine in the Chicago area.

35

7.     It was further part of the conspiracy that defendant SAUL RODRIGUEZ distributed wholesale quantities of cocaine and heroin to customers of the Rodriguez DTO in the Chicago area, including defendant WALTER JOHNSON for resale to others. The cocaine and heroin were commonly partially fronted to wholesale customers of the Rodriguez DTO.

8.     It was further part of the conspiracy that defendant SAUL RODRIGUEZ, and others, including Andres Torres and Ruben Villarreal, acting at the direction of SAUL RODRIGUEZ, regularly picked up wholesale quantities of cocaine and heroin from suppliers, including Pedro Victoria, and then delivered wholesale quantities of cocaine and heroin to customers of the Rodriguez DTO in the Chicago area, including defendant WALTER JOHNSON.

9.     It was further part of the conspiracy that defendant SAUL RODRIGUEZ, and others, including Andres Torres and Ruben Villarreal, acting at the direction of SAUL RODRIGUEZ, regularly collected United States Currency derived from the sale of cocaine and heroin ("narcotics proceeds") from customers of the Rodriguez DTO in the Chicago area, including defendant WALTER JOHNSON, and then delivered the narcotics proceeds to the suppliers of cocaine and heroin, including Pedro Victoria.

10.     It was further part of the conspiracy that defendant SAUL RODRIGUEZ and others, including Andres Torres and Ruben Villarreal, acting at the direction of SAUL RODRIGUEZ, stored cocaine, heroin, and narcotics proceeds at warehouses, homes, and garages in the Chicago area under the control of the Rodriguez DTO.

11.     It was further part of the conspiracy that certain defendants, including SAUL RODRIGUEZ, GLENN LEWELLEN, HECTOR URIARTE, JORGE URIARTE, ANDRES

FLORES, TONY SPARKMAN, FARES UMAR, and ROBERT CARDENA, obtained, used, carried, possessed, brandished, and discharged firearms in connection with the Rodriguez DTO's illegal activity, including, but not limited to, kidnapping, robbery, and illegal trafficking of controlled substances.

12.     It was further part of the conspiracy that certain defendants, including SAUL RODRIGUEZ, HECTOR URIARTE, JORGE URIARTE, ANDRES FLORES, WALTER JOHNSON, and Andres Torres obtained and used trap compartments in homes and vehicles to conceal and store cocaine, heroin, narcotics proceeds, and firearms.

13.     It was further part of the conspiracy that GLENN LEWELLEN and others provided certain defendants, including SAUL RODRIGUEZ, and Andres Torres with information about the fact of, and the extent of, federal investigations into the Rodriguez DTO's activities.  Defendant SAUL RODRIGUEZ and Andres Torres used that information to evade detection by law enforcement.

14.     It was further part of the conspiracy that certain defendants, including GLENN LEWELLEN, obstructed justice in order to protect and conceal defendant SAUL RODRIGUEZ and the Rodriguez DTO's drug trafficking activities.

15.     It was further part of the conspiracy that the defendants and other co-conspirators would and did conceal and hide, and cause to be concealed and hidden, the purposes of the acts done in furtherance of the conspiracy, and would and did use coded language, surveillance and counter-surveillance techniques, and other means to avoid detection and apprehension by law enforcement authorities and otherwise to provide security to members of the conspiracy;

37

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## **FORFEITURE ALLEGATION ONE**

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.      The allegations of Count One of this Third Superseding Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 1963.

2.      As a result of their violation of Title 18, United States Code, Section 1962(d), as alleged in the foregoing Third Superseding Indictment,

SAUL RODRIGUEZ,
GLENN LEWELLEN,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty,"
MANUEL URIARTE,
also known as "Manny,"
ANDRES FLORES,
also known as "Turtle,"
TONY SPARKMAN,
also known as "Black" and "Big Black," and
FARES UMAR,
also known as "Sumo,"

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2) and (a)(3): any interest acquired or maintained in violation of section 1962; any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

39

3.    The interests of the defendants, subject to forfeiture to the United States pursuant

to Title 18, United States Code, Section 1963(a)(1), (a)(2), (a)(3), include, but are not limited to

$9,537,000 in United States currency representing proceeds of the racketeering enterprise, and

the following property:

a.   one 1972 Chevrolet Chevelle, VIN:1D37H2R507244;

b. ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY
OF LYON, STATE OF NEVADA, MORE PARTICULARLY DESCRIBED AS
FOLLOWS:

PARCEL NO. 1:
ALL THAT REAL PROPERTY SITUATED IN THE NORTH ONE-
HALF OF THE NORTHWEST ONE-QUARTER SECTION 27,
TOWNSHIP 13 NORTH, RANGE 25 EAST, M.D.B.&M., LYON
COUNTY NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTH LINE OF THE NORTH
ONE-HALF OF THE NORTHWEST ONE-QUARTER OF SAID
SECTION 27 FROM WHICH THE SOUTHWEST CORNER OF RIO
VISTA RANCHOS AS SAID CORNER IS SHOWN AND SO
DESIGNATED UPON THE OFFICIAL PLAT THEREOF FILED AS
DOCUMENT NO. 89357 LYON COUNTY RECORDS; BEARS SOUTH
89" 49' 44" EAST 1615.28 FEET DISTANT; THENCE, FROM SAID
POINT OF BEGINNING ALONG THE SOUTH LINE OF THE NORTH
ONE-HALF OF THE NORTHWEST ONE-QUARTER OF SAID
SECTION 27 NORTH 89" 49' 44" WEST 365.00 FEET TO A POINT IN
THE WEST LINE OF SAID SECTION 27; THENCE ALONG SAID
WEST LINE NORTH 0 ˚ 06' 35" WEST 1308.58 FEET TO THE
NORTHWEST CORNER OF SAID SECTION 27; THENCE , ALONG
THE NORTH LINE OF SAID SECTION 27 SOUTH 89 ˚ 37' 02" EAST
371.41 FEET; THENCE LEAVING SAID NORTH LINE SOUTH 0 ˚ 10'
16" WEST 1307.19 FEET TO THE POINT OF BEGINNING.

PARCEL NO. 2:
ALL THAT REAL PROPERTY SITUATED IN THE NORTH ONE-
HALF OF THE NORTHWEST ONE-QUARTER OF SECTION 27,
TOWNSHIP 13 NORTH, RANGE 25 EAST, M.D.B. & M., LYON
COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTH LINE OF THE NORTH ONE-HALF OF THE NORTHWEST ONE-QUARTER OF SAID SECTION 27 FROM WHICH THE SOUTHWEST CORNER OF RIO VISTA RANCHOS AS SAID CORNER IS SHOWN AND SO DESIGNATED UPON THE OFFICIAL PLAT THEREOF, FILED AS DOCUMENT NO. 89357, LYON COUNTY RECORDS, BEARS SOUTH 89 ˚ 49' 44" EAST 1075.82 FEET DISTANT; THENCE FROM SAID POINT OF BEGINNING ALONG THE SOUTH LINE OF THE NORTH ONE-QUARTER OF THE NORTHWEST ONE-QUARTER OF SAID SECTION 27 NORTH 89 ˚ 49' 44" WEST 539.46; THENCE LEAVING SAID SOUTH LINE NORTH 0 ˚ 10' 16" EAST 1307.19 FEET TO A POINT IN THE NORTH LINE OF SAID SECTION 27; THENCE ALONG SAID NORTH LINE SOUTH 89 ˚ 37' 02" EAST 539.47 FEET; THENCE LEAVING SAID NORTH LINE SOUTH 0 ˚ 10' 16" WEST 1305.20 FEET TO THE POINT OF BEGINNING

Permanent Real Estate Index Numbers: 001-471-06 and 001-471-07;

c. one Ruger .357 caliber Magnum handgun, serial number 572-38922, and assorted ammunition; and

d. one Taurus .40 caliber PT140 handgun, serial number STF24177, and assorted ammunition.

4.    If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), (a)(3), as a result of any act or omission of the defendants:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred to, sold to, or deposited with a third person;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value;

      e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of substitute property belonging to the defendants under the provisions of Title 18, United States Code, Section 1963(m) including but not limited to the following properties:

1.    LOTS 66, 101, 105 AND 112 IN BRIDGES OF MOKENA, BEING A SUBDIVISION OF PART OF THE NORTHWEST QUARTER OF SECTION 30, TOWNSHIP 35 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED NOVEMBER 21, 2005, AS DOCUMENT NUMBER R2005205381, CERTIFICATES OF CORRECTION RECORDED DECEMBER 23, 2005, AS DOCUMENT NO. R2005-226863, FEBRUARY 6, 2006, AS DOCUMENT NO. R2006-023129, MARCH 16, 2006, AS DOCUMENT R2006-44613, AND APRIL 10, 2007, AS DOCUMENT R2007-054421, IN WILL COUNTY, ILLINOIS.

PIN: 09-30-103-003; Address: 11789 London Bridge Drive, Mokena, Illinois;

PIN: 09-30-105-015; Address: 21701 London Bridge Drive, Mokena, Illinois;

PIN: 09-30-105-019; Address: 21753 London Bridge Drive, Mokena, Illinois; and

PIN: 09-30-105-026; Address: 21777  London Bridge Drive, Mokena, Illinois;

2.  LOT 110 IN SECOND ADDITION TO ARBURY HILLS, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 10, TOWNSHIP 35 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS.

    Commonly known as: 19628 Walnut Street, Mokena, Illinois

    PIN: 09-10-311-010-0000; and

3.  LOT 36 IN BLOCK 11 IN CORWITH'S RESUBDIVISION OF BLOCKS 81 TO 120 AND 124 TO 140, 144 TO 150 AND 152 TO 157, ALL INCLUSIVE IN THE TOWN OF BRIGHTON IN THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 36, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY ILLINOIS.

    Commonly known as: 2737 West 37th Place, Chicago, Illinois

    PIN: 16-36-417-015-0000

All pursuant to Title 18, United States Code, Section 1963.

## FORFEITURE ALLEGATION TWO

The SPECIAL JANUARY 2009 GRAND JURY further alleges:

1.     The allegations of Counts Four, Nine, Twelve, and Thirteen of this Third Superseding Indictment are realleged and incorporated herein by reference for the purpose of alleging that certain property is subject to forfeiture to the United States, pursuant to Title 21, United States Code, Section 853.

2.     As a result of their violations of Title 21, United States Code, Sections 846, and 841(a)(1) as alleged in the foregoing Third Superseding Indictment,

SAUL RODRIGUEZ,
GLENN LEWELLEN,
HECTOR URIARTE,
also known as "Gordo" and "G,"
JORGE URIARTE,
also known as "Lefty,"
ANDRES FLORES,
also known as "Turtle,"
TONY SPARKMAN,
also known as "Black" and "Big Black,"
FARES UMAR,
also known as "Sumo,"
WALTER JOHNSON,
also known as "Wheels,"
JORGE LOPEZ,
also known as "Oso" and "O," and
ROBERT CARDENA,

defendants herein, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2): (1) any and all of property constituting and derived from any proceeds the defendants obtained, directly and indirectly, as a result of the said violations; and (2) any and all property used, and intended to be used, in any manner or part to commit and to facilitate the commission of the said violations.

44

3.    The interests of the defendants subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 853, include, but are not limited to $9,425,000 in United States currency representing proceeds of the narcotics distribution organization, and the following property:

      a.   funds in the amount of $40,060;

      b.   funds in the amount of $1,570;

      c.   jewelry valued at $426,045 seized from Walter Johnson's residence at the time of his arrest;

      d.   one diamond tennis bracelet seized from safe deposit box #5216 at Bank of America;

      e.   one 2008 Audi Q7, VIN: WA1BV74L18D026127;

      f.   one 2005 Audi A4, VIN: WAUAF78EX5A535265;

      g.   one 1972 Chevrolet Chevelle, VIN:1D37H2R507244;

      h.   real property commonly known as 22550 Nature Creek Circle, Frankfort, Illinois and legally described as:

LOT 31 IN LAKEVIEW ESTATES UNIT 4, BEING A SUBDIVISION IN THE NORTHEAST 1/4 OF SECTION 35, TOWNSHIP 35 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN ACCORDING TO THE PLAT THEREOF RECORDED JUNE 16, 2005 AS DOCUMENT R2005-100833, IN WILL COUNTY, ILLINOIS.

Permanent Real Estate Index Number: 09-35-207-027-0000

      i.   real property commonly known as 291 Maryview Parkway, Matteson, Illinois and legally described as:

LOT 57 IN PROVIDENCE MANOR PHASE 2 BEING A SUBDIVISION OF PART OF THE NORTHWEST 1/4 AND THE NORTH ½ OF THE SOUTHWEST 1/4 OF SECTION 16, TOWNSHIP 35 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number: 31-16-103-002 and 31-16-103-004

j. ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF LYON, STATE OF NEVADA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

PARCEL NO. 1:
ALL THAT REAL PROPERTY SITUATED IN THE NORTH ONE-HALF OF THE NORTHWEST ONE-QUARTER SECTION 27, TOWNSHIP 13 NORTH, RANGE 25 EAST, M.D.B.&M., LYON COUNTY NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTH LINE OF THE NORTH ONE- HALF OF THE NORTHWEST ONE-QUARTER OF SAID SECTION 27 FROM WHICH THE SOUTHWEST CORNER OF RIO VISTA RANCHOS AS SAID CORNER IS SHOWN AND SO DESIGNATED UPON THE OFFICIAL PLAT THEREOF FILED AS DOCUMENT NO. 89357 LYON COUNTY RECORDS; BEARS SOUTH 89" 49' 44" EAST 1615.28 FEET DISTANT; THENCE, FROM SAID POINT OF BEGINNING ALONG THE SOUTH LINE OF THE NORTH ONE-HALF OF THE NORTHWEST ONE-QUARTER OF SAID SECTION 27 NORTH 89" 49' 44" WEST 365.00 FEET TO A POINT IN THE WEST LINE OF SAID SECTION 27; THENCE ALONG SAID WEST LINE NORTH 0 ˙ 06' 35" WEST 1308.58 FEET TO THE NORTHWEST CORNER OF SAID SECTION 27; THENCE , ALONG THE NORTH LINE OF SAID SECTION 27 SOUTH 89 ˙ 37' 02" EAST 371.41 FEET; THENCE LEAVING SAID NORTH LINE SOUTH 0 ˙ 10' 16" WEST 1307.19 FEET TO THE POINT OF BEGINNING.

PARCEL NO. 2:
ALL THAT REAL PROPERTY SITUATED IN THE NORTH ONE-HALF OF THE NORTHWEST ONE-QUARTER OF SECTION 27, TOWNSHIP 13 NORTH, RANGE 25 EAST, M.D.B. & M., LYON COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTH LINE OF THE NORTH ONE-HALF OF THE NORTHWEST ONE-QUARTER OF SAID SECTION 27 FROM WHICH THE SOUTHWEST CORNER OF RIO VISTA RANCHOS AS SAID CORNER IS SHOWN AND SO DESIGNATED UPON THE OFFICIAL PLAT THEREOF, FILED AS DOCUMENT NO. 89357, LYON COUNTY RECORDS, BEARS SOUTH 89 ˙ 49' 44" EAST 1075.82 FEET DISTANT; THENCE FROM

46

SAID POINT OF BEGINNING ALONG THE SOUTH LINE OF THE NORTH ONE-QUARTER OF THE NORTHWEST ONE-QUARTER OF SAID SECTION 27 NORTH 89 ' 49' 44" WEST 539.46; THENCE LEAVING SAID SOUTH LINE NORTH 0 ' 10' 16" EAST 1307.19 FEET TO A POINT IN THE NORTH LINE OF SAID SECTION 27; THENCE ALONG SAID NORTH LINE SOUTH 89 ' 37' 02" EAST 539.47 FEET; THENCE LEAVING SAID NORTH LINE SOUTH 0 ' 10' 16" WEST 1305.20 FEET TO THE POINT OF BEGINNING

Permanent Real Estate Index Numbers: 001-471-06 and 001-471-07;

k. real property commonly known as 10715 South Michigan, Chicago, Illinois and legally described as:

THE SOUTH 50 FEET OF LOT 16 (EXCEPT THE NORTH 25 FEET) IN THE HENGEVELD'S SUBDIVISION OF LOT 5 IN PETER DEJONG'S SUBDIVISION OF LOT 9 IN ASSESSOR'S DIVISION OF THE WEST QUARTER OF SECTION 15, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number: 25-15-302-038-0000;

l. real property commonly known as 6636 South Parnell, Chicago, Illinois and legally described as:

LOT 8 (EXCEPT THE NORTH 29.26 FEET AND ALSO EXCEPT THE WEST 30 FEET OF SAID LOT) THE NORTH LINE THEREOF BEING THE CENTER LINE OF PARTY WALL ON THE NORTH LINE OF PERRY'S RESUBDIVISION OF BLOCK 18 IN LINDEN GROVE A SUBDIVISION OF THE SOUTH 90 ACRES AND THE WEST 35 ACRES OF THE NORTH 70 ACRES OF THE NORTHWEST 1/4 OF SECTION 21, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Permanent Real Estate Index Number: 20-21-126-033; and

m. LOT 5 IN ENGLEWOOD ON THE HILL, A SUBDIVISION OF THE EAST ½ OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF THE SOUTHWEST 1/4 OF SECTION 20, TOWNSHIP 38 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly known as; 1413 W. Marquette Rd., Chicago, Illinois

PIN: 20-20-303-005-0000;

n. one Ruger .357 caliber Magnum handgun, serial number 572-38922, and assorted ammunition; and

o. one Taurus .40 caliber PT140 handgun, serial number STF24177, and assorted ammunition.

4.  If any of the forfeitable property described above as being subject to forfeiture pursuant to Title 21, United States Code, Section 853(a), as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States to seek forfeiture of substitute property belonging to the defendant under the provisions of Title 21, United States Code, Section 853(p)including but not limited to the following properties:

1.  LOTS 66, 101, 105 AND 112 IN BRIDGES OF MOKENA, BEING A SUBDIVISION OF PART OF THE NORTHWEST QUARTER OF SECTION 30, TOWNSHIP 35 NORTH, RANGE 12 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED NOVEMBER 21, 2005, AS DOCUMENT NUMBER R2005205381, CERTIFICATES OF CORRECTION RECORDED DECEMBER 23, 2005, AS DOCUMENT NO. R2005-226863, FEBRUARY 6, 2006, AS DOCUMENT NO. R2006-023129, MARCH 16, 2006, AS DOCUMENT R2006-44613, AND APRIL 10, 2007, AS DOCUMENT R2007-054421, IN WILL COUNTY, ILLINOIS.

PIN: 09-30-103-003; Address: 11789 London Bridge Drive, Mokena, Illinois;

PIN: 09-30-105-015; Address: 21701 London Bridge Drive, Mokena, Illinois;

PIN: 09-30-105-019; Address: 21753 London Bridge Drive, Mokena, Illinois; and

PIN: 09-30-105-026; Address: 21777 London Bridge Drive, Mokena, Illinois;

2.  LOT 110 IN SECOND ADDITION TO ARBURY HILLS, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 10, TOWNSHIP 35 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN WILL COUNTY, ILLINOIS.

    Commonly known as: 19628 Walnut Street, Mokena, Illinois

    PIN: 09-10-311-010-0000;

3.  LOT 36 IN BLOCK 11 IN CORWITH'S RESUBDIVISION OF BLOCKS 81 TO 120 AND 124 TO 140, 144 TO 150 AND 152 TO 157, ALL INCLUSIVE IN THE TOWN OF BRIGHTON IN THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 36, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN IN COOK COUNTY ILLINOIS.

    Commonly known as: 2737 West 37th Place, Chicago, Illinois

    PIN: 16-36-417-015-0000; and

4. LOT 210 IN BLOCK 3 IN YOUNG AND CLARKSON'S THIRD ADDITION TO KENSINGTON, BEING A SUBDIVISION OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 (EXCEPT THE EAST 13.565 FEET) OF SECTION 28, TOWNSHIP 37 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly known as: 11933 S. LaSalle, Chicago, Illinois

PIN: 25-28-205-017-0000;

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

50